UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALVIN CATOE,

      Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

17-CV-86
DECISION AND ORDER

On January 30, 2017, the plaintiff, Alvin Catoe, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On September 5, 2017, Catoe moved for judgment on the pleadings, Docket Item 15; on January 19, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 22; and on February 9, 2018, Catoe replied, Docket Item 23.

For the reasons stated below, this Court grants Catoe's motion in part and denies the Commissioner's cross-motion.

## **BACKGROUND**

### I.   PROCEDURAL HISTORY

On February 13, 2013, Catoe, a former warehouse worker, assembler, and maintenance worker, applied for Disability Insurance Benefits ("DIB") and Social Security Income Benefits ("SSI"). Tr. 75-81, 211. He claimed that he had been

disabled since October 6, 2011, due to back and shoulder problems: inflammation in the rotary cuff of his left shoulder, a dislocated disc in his neck, a bulging disc in the lumbar region of his back, and a torn disc in the thoracic region of his back.  Tr. 251.

On May 1, 2013, Catoe received notice that his application was denied because he was not disabled under the Act.  Tr. 153.  He requested a hearing before an administrative law judge ("ALJ"), Tr. 165-66, which was held on September 26, 2014, Tr. 67.  The ALJ then issued a decision on May 18, 2015, confirming the finding that Catoe was not disabled.  *Id.* at 46-60.  Catoe appealed the ALJ's decision, but his appeal was denied, and the decision then became final.  *Id.* at 1-4.  So Catoe filed this action and asked this Court to review the ALJ's decision.  Docket Item 1.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Catoe's claims of error.  Catoe was examined by many different providers—including several described in detail by the ALJ—for his neck, back, and shoulder injuries.  Tr. 53-57.  But only eight, Robert Hill, Ph.D., a psychologist; T. Andrews, a psychologist;[1] Nikita Dave, M.D., an internist; Scott A. Croce, D.C., a chiropractor; Edward D. Simmons, M.D., an orthopedic surgeon; Conrad R. Williams, M.D., a pain management specialist; Wilson Lebita, P.T., a physical therapist; and Ross Guarino, P.A., a physician assistant, are significant to Catoe's arguments here.

---

[1] The record is silent as to the full name or the academic qualifications of Dr. Andrews.

2

### A. Catoe's Mental Health Evaluations

#### 1. Robert Hill, Ph.D, a Psychologist

On April 5, 2010, Catoe was evaluated by Dr. Robert Hill, a psychologist. Tr. 313-17. Dr. Hill diagnosed Catoe with "[a]djustment disorder with depressed mood." Tr. 316.

#### 2. T. Andrews, a Psychologist

On April 14, 2010, Dr. T. Andrews, a psychologist, evaluated Catoe. Tr. 324-41. Catoe reported "feelings of hopelessness, irritability, fatigue, loss of energy, and some social withdrawal." Tr. 336. He also reported "being depressed because he cannot work, has financial problems, and because of his physical problems." *Id.* Dr. Andrews "diagnosed [Catoe with] an adjustment disorder with depressed mood" and "suggest[ed] that [Catoe] may have some difficulties at times dealing with stress." *Id.*

### B. Catoe's Physical Evaluations

#### 1. Nikita Dave, M.D., an Internist

On April 5, 2010, Catoe was examined by Dr. Nikita Dave, an internist. Tr. 318-22. Dr. Dave diagnosed Catoe with back pain; a number of joint and tendon issues primarily affecting his shoulders, knees, and hips; high cholesterol; hypertension; and chronic sinusitis. Tr. 322. Dr. Dave determined that Catoe had "mild to moderate limitations for lifting, carrying, pushing, and pulling of heavy objects repeatedly as well as for repetitive bending forward through the lumbar spine." *Id.*

#### 2. Scott A. Croce, D.C., a Chiropractor

Catoe treated with Dr. Scott A. Croce, a chiropractor, from November 2011 through September 2012. Tr. 403-72. In January 2012, Dr. Croce advised Catoe that

he may return to work with "light duty" and no more than ten pounds of lifting. Tr. 454. Dr. Croce also told Catoe to avoid certain motions, such as repetitive bending, twisting, stooping, and climbing. *Id.* And he told Catoe not to sit, stand, or walk longer than two hours without braces. *Id.*

### 3.      Edward D. Simmons, M.D., an Orthopedic Surgeon

On January 5, 2012, Dr. Edward D. Simmons, an orthopedic surgeon, examined Catoe. Tr. 367-69. Dr. Simmons found that Catoe had a limited range of motion in his cervical spine and in his lumbar spine. Tr. 368. After reviewing Catoe's MRI images, Dr. Simmons diagnosed a number of herniations and other issues with discs throughout Catoe's spine. Tr. 368-69. Dr. Simmons recommended chiropractic treatment, medical massage therapy, and therapeutic injections. Tr. 369.

### 4.      Conrad R. Williams, M.D., a Pain Management Specialist

The record shows that Dr. Conrad R. Williams, a pain management doctor, treated Catoe between November 2012 and June 2014. *See, e.g.*, Tr. 484, 677, 701. Catoe regularly saw Dr. Williams with complaints of left shoulder pain. Tr. 482, 484, 673, 690, 693, 699. Dr. Williams diagnosed Catoe with chronic tendinitis/tendinopathy of the left shoulder, Tr. 484, and pain in the joint shoulder region, Tr. 694, 700, among other ailments of the neck, shoulder, and back. On some visits, Dr. Williams determined that Catoe had a full range of motion in his left shoulder. *See, e.g.,* Tr. 482, 675. But on most visits, Dr. Williams determined that Catoe had a limited range of motion in his shoulder. *See, e.g.,* Tr. 673, 690, 693, 699, 703. Dr. Williams also regularly determined that Catoe's "percentage of temporary impairment was" fifty percent. Tr. 482, 484, 692, 695, 701.

### 5. Wilson Lebita, Physical Therapist

Dr. Williams referred Catoe to Wilson Lebita, a physical therapist, for a functional capacity examination on May 18, 2013. Tr. 620. P.T. Lebita determined that Catoe was "not capable of performing the physical demands of the target job of 'Assembly-Machine Tool Setter'" because his "physical abilities did not match the demands of the target job." Tr. 622.

### 6. Ross Guarino, Physician Assistant

Catoe was examined by Ross Guarino, a physician assistant, on March 24, 2015. Tr. 819. P.A. Guarino also examined Catoe on May 19, 2015. Tr. 822. On both dates, P.A. Guarino determined that Catoe's "percentage of temporary impairment" was thirty-three percent. Tr. 820, 823.

## III. THE ALJ'S DECISION

In denying Catoe's application, the ALJ evaluated Catoe's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the

5

claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Catoe was not currently engaged in "substantial gainful activity." Tr. 51. At step two, the ALJ found that Catoe had the following severe impairments: "left shoulder impingement and degenerative disc disease of the cervical and lumbar spine." *Id.* At step three, the ALJ determined that

6

these severe impairments did not medically meet or equal the criteria of any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

In assessing Catoe's RFC, the ALJ determined that Catoe could perform light work, as defined in 20 C.F.R. § 404.1567(b),[2] but should not perform overhead lifting. Tr. 52. He also found that Catoe is capable of frequently lifting and carrying up to twenty pounds. *Id.* With respect to Catoe's shoulder injury, the ALJ based his findings on the medical opinions of A. Marc Tetro, M.D., an orthopedist; Samuel Balderman, M.D., a consultative examiner for New York State; Dr. Shahind Banday, M.D., Catoe's primary care physician; and Dr. Williams. Tr. 54-55. With respect to Catoe's neck and back issues, the ALJ based his findings on the medical opinions of Dr. Simmons; Dr. Balderman; Dr. Williams; Mikhail Strut, M.D., a pain management specialist; and Jerry Tracey, M.D., a pain management specialist. Tr. 55-57. The ALJ expressly noted the weight that he gave to the opinions only of Dr. Balderman and Dr. Tetro. Tr. 58. He gave partial weight to Dr. Balderman and significant weight to Dr. Tetro. *Id.*

At step four, the ALJ determined that Catoe could perform his past relevant work as an assembly press operator, which does not involve activities precluded by his RFC. Tr. 58.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

7

Catoe requested review of the ALJ's decision by the Appeals Council, and he submitted additional evidence for its consideration.[3] Tr. 2. The Appeals Council found that this evidence did not provide a basis for changing the ALJ's decision because it consisted of new information about Catoe's condition after the ALJ's decision and not about whether Catoe was disabled on or before May 28, 2015, the date of the ALJ's decision. *Id.*

Catoe raises several objections to the ALJ's formulation of his RFC. First, he claims that the ALJ erred in failing to consider a number of Catoe's impairments in determining whether he had a severe impairment at step two and in formulating his RFC. Docket Item 15-1 at 18. Catoe also argues that the ALJ erred in failing even to mention the opinions of Dr. Dave, Dr. Hill, Dr. Andrews, Dr. Williams, physical therapist Lebita, chiropractor Dr. Croce, and physician assistant Guarino. *Id.* at 23. Finally, Catoe argues that the Appeals Council violated SSA regulations when it failed to consider new and material evidence that he submitted in May 2015. *Id.* at 26.

## **STANDARD OF REVIEW**

### I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are

---

[3] The additional evidence included a letter from Eric Roger, M.D., dated July 6, 2016; a file review conducted by Dr. David Storrs, dated February 29, 2016, through March 10, 2016; treatment notes from Dr. Roger from November and December 2015; a letter and treatment notes from David J. Wright, D.C., dated October 2015; and treatment notes from the New York Spine and Wellness Center, dated September 14, 2015.

8

supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. TREATING PHYSICIAN RULE

Under SSA regulations,[4] a "treating source" is a claimant's "own acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing [medical] treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2). A treating physician's opinion is given controlling weight so long as: (1) it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) it "is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id*. § 404.1527(c)(2). SSA regulations provide that the agency "will always give good reasons in [its] notice of determination or decision for the weight we give [a] treating source's medical opinion." *Id*.

---

[4] "For claims filed . . . before March 27, 2017, the rules in [20 C.F.R. § 404.1527] apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." 20 C.F.R. § 404.1527.

9

Here, Dr. Williams qualifies as a treating source under § 404.1527(a)(2) because Catoe saw him repeatedly and had an ongoing treatment relationship with him for over a year. Although the ALJ explained that he gave "partial weight" to the opinion of Dr. Balderman, a consultative thoracic surgeon, and "significant weight" to the opinion of Dr. Tetro, an orthopedist,[5] the ALJ did not even mention the weight that he gave to the opinion of Dr. Williams,[6] let alone provide "good reasons" for the weight he gave to the "treating source's medical opinion." For that reason alone, the case must be remanded to allow the ALJ to state the weight given to Dr. Williams's opinion and the good reasons behind that decision.

## II. THE ALJ'S FAILURE TO CONSIDER CATOE'S MENTAL IMPAIRMENTS

Catoe objects to the ALJ's failure to consider the impact of his anxiety, depression, and adjustment disorder on his RFC. Docket Item 15-1 at 18.

Although Catoe did not inform SSA of his anxiety, depression, and adjustment disorder when he initially applied for benefits, *see* Tr. 251, Social Security Regulations require the agency to "develop evidence regarding the possibility of a medically determinable mental impairment when [it] ha[s] information to suggest that such an

---

[5] Dr. Tetro evaluated Catoe on October 19, 2011, December 7, 2011, February 2, 2012, March 1, 2012, March 29, 2012, and April 28, 2012, for his complaints of left shoulder pain. Tr. 373-402.

[6] When reviewing Dr. Williams's medical evidence, the ALJ noted that some of the findings that Dr. Williams made during some of Catoe's visits were apparently in conflict with findings that he made at other visits. *See, e.g.*, Tr. 55 (at one visit, Dr. Williams found that Catoe had a permanent partial disability regarding his right shoulder injury but at another, Dr. Williams found Catoe's shoulders to be normal). Nevertheless, it still is unclear whether the ALJ gave Dr. Williams's opinion any weight and, if little or no weight was given, whether it was for this or some other reason.

10

impairment exists." 20 C.F.R. § 404.1529(b); *see Shafer v. Barnhart*, 120 F. App'x 688, 693 (9th Cir. 2005). Here, the record before the ALJ included Catoe's examinations by Dr. Hill and Dr. Andrews, both of whom diagnosed Catoe with "adjustment disorder with depressed mood." Tr. 316, 336. Thus, the agency had information suggesting an impairment, and the ALJ was obliged at least to consider—and to develop, if necessary—the evidence in this regard. *See* 20 C.F.R. § 404.1529(b); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)) ("it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge at trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'").[7]

For that reason, the ALJ was obligated to address Catoe's mental health issues and whether they affected his ability to work. An ALJ's "finding about [a claimant's RFC is] based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e). "If [a claimant] ha[s] more than one impairment[, the ALJ] consider[s] all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe.' . . . [in] assess[ing] the claimant's RFC]." *Id.* § 404.1545(a)(2). Despite the fact

---

[7] The Commissioner downplays the impact of Dr. Hill's evaluation on the ALJ's requirement to consider Catoe's mental impairments, noting that it is "from prior to the relevant period and related to a different application." Docket Item 22-1 (citing Tr. 313-17). But Dr. Hill's examination was only eighteen months before Catoe submitted his application for DIB and SSI benefits. Unlike medical records "generated more than decade prior to the relevant period," *Reynold v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014), the record here makes the ALJ aware of a possible mental impairment that should have been considered.

that the record before the ALJ included evidence of Catoe's mental impairments, *see*, *e.g.*, Tr. 316, the ALJ never even mentioned those mental impairments in his RFC determination.[8]

The Commissioner suggests that Catoe's anxiety and other mental impairments were insignificant and could not have interfered with his ability to perform substantial gainful employment. Docket Item 22-1 at 15. But "without any analysis from the ALJ, there is no basis for drawing any conclusions about what evidence he considered or overlooked." *Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016).[9]

---

[8] In a court proceeding, a judge is required to analyze only those claims raised by the parties. Along those lines, the Commissioner contends that the ALJ did not err here because Catoe did not raise any mental health conditions that affected his ability to perform work-related activities. Docket Item 22-1 at 14. But the Commissioner cites no authority suggesting that the ALJ's determination is limited to the impairments that the claimant raises, and Social Security Regulations suggest otherwise. *See* 20 C.F.R. §§ 404.1520(e), 404.1529(b), 404.1545(a)(2). Moreover, the Supreme Court has noted that "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings." *Sims v. Apfel*, 530 U.S. 103, 110 (2000).

> Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.] . . . The Commissioner has no representative before the ALJ to oppose the claim for benefits, and we have found no indication that [s]he opposes claimants before the [Appeals] Council.

*Id.* at 110-11.

[9] Catoe also contends that the ALJ erred in failing to consider other impairments, primarily myofascial and chronic pain disorders and various degenerative disorders. Docket Item 15-1 at 18. "The ALJ must 'review all of the evidence relevant' to a claim under 20 C.F.R. § 404.1527(c), but he does not err by failing to explicitly mention all of that evidence." *Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. 2003). After reviewing the record, this Court agrees with the Commissioner that these disorders appear to be directly related to, or perhaps the same as, the neck, shoulder, and back impairments that the ALJ gave substantial consideration to in his decision. *See* Tr. 52-57.

12

Because the ALJ never even mentioned Catoe's mental health issues, the case is remanded so that the ALJ can address Catoe's mental impairments and decide whether those impairments, alone or in combination with his physical impairments, affect his ability to engage in substantial gainful activity. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) (remanding where "ALJ did not take [mild mental impairments] into account when determining" claimant's RFC).

### III. THE ALJ'S FAILURE TO CONSIDER OPINIONS FROM OTHER MEDICAL SOURCES

SSA regulations provide that the agency "will always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence [it] receive[s]." 20 C.F.R. § 404.1527(b). "Regardless of its source, [SSA] will evaluate every medical opinion [it] receive[s]." *Id.* § 404.1527(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." *Id.* § 404.1527(a)(1). The regulations also provide that the agency must consider even "[o]pinions from medical sources who are not acceptable medical sources and from nonmedical sources." *Id.* § 404.1527(f).

#### A. Dr. Hill, Dr. Dave, Dr. Andrews, Physical Therapist Lebita, Chiropractor Dr. Croce, and Physician Assistant Guarino

Catoe objects to the ALJ's failure to consider and weigh the opinions of Dr. Hill, Dr. Dave, Dr. Andrews, physical therapist Lebita, chiropractor Dr. Croce, and physician assistant Guarino. Docket Item 15-1 at 23. Catoe's medical record includes diagnoses from both Dr. Hill and Dr. Andrews of adjustment disorder with depressed mood. Tr.

13

321, 336. It includes statements from Dr. Dave, Dr. Croce, and physician assistant Guarino reflecting various judgments about the nature and severity of Catoe's physical impairments. Tr. 318-22, 819-24. It includes an analysis of Catoe's work tolerance by physical therapist Lebita. Tr. 620-623. Under SSA's regulations, the ALJ should have weighed this evidence in determining whether Catoe retains an RFC to perform alternative substantial gainful work.

The Commissioner contends that the ALJ did not err by failing to consider the opinions of Dr. Hill, Dr. Dave, and Dr. Andrews because those opinions "predate the October 2011 work-related injury and car accident that [Catoe] claims caused his disabling impairments." Docket Item 22-1 at 20. But those opinions are in Catoe's case record, and SSA's regulations state that the agency will "*always* consider the medical opinions in [a claimant's] case record." 20 C.F.R. § 404.1527(b) (emphasis added); *see also* 20 C.F.R. § 404.1506 (setting forth when SSA will not consider an impairment). What is more, the fact that these opinions predate Catoe's accident and injury does not necessarily make them irrelevant. For example, Dr. Hill's 2010 opinion regarding Catoe's psychological impairments put the agency on notice of the possibility that he became disabled on his alleged onset date due to his underlying psychological impairments when combined with the physical impairments resulting from the accident. *Cf. Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) ("It is possible that evidence from [years before a gap in evidence] could demonstrate that [a claimant's] condition would not improve"). In any event, it was incumbent on the ALJ at least to address these medical opinions and the other unanalyzed medical evidence so that a reviewing court can be sure that Catoe "has had a full hearing under the regulations and in accordance

14

with the beneficent purposes of the Social Security Act." *Moran*, 569 F.3d at 112 (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). *See Thomas*, 826 F.3d at 959.

### B. Dr. Simmons

Dr. Simmons evaluated Catoe on January 5, 2012, for his complaints of neck and back pain. *See* Tr. 367-69. Although the ALJ referred to Dr. Simmons's findings, *see* Tr. 55, the ALJ did not address the weight given to those findings in making his determination about Catoe's RFC. Especially because of Dr. Simmons's specialty in injuries to the neck and back,[10] the ALJ should have weighed his opinion. On remand, the ALJ should address and evaluate Dr. Simmons's opinions as well.

## IV. APPEALS COUNCIL'S DETERMINATION THAT ADDITIONAL EVIDENCE DID NOT RELATE TO THE PERIOD ON OR BEFORE THE DATE OF THE ALJ'S DECISION

"Social Security regulations allow a claimant to submit additional evidence to the Appeals Council in support of [a] Request for Review." *Hightower v. Colvin*, 2013 WL 3784155, at *3 (W.D.N.Y. July 18, 2013) (citing 20 C.F.R. §§ 416.1470(b) and 416.1476(b)(1)). "The Appeals Council must accept the evidence so long as it is new, material, and relates to the period on or before the date of the ALJ's decision." *Id*. "Additional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition previously complained of by the plaintiff." *Id*.

---

[10] Dr. Simmons is a specialist in Adult & Pediatric Spinal Surgery. Tr. 367. He is also a clinical professor in the Department of Orthopedic Surgery at the State University of New York at Buffalo. *Id*.

15

"Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting 20 C.F.R. § 404.970(b)). "If the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Id.*

In Catoe's case, the Appeals Council explained that it "found no reason under [SSA] rules to review the Administrative Law Judge's decision." Tr. 1. It also explained that it would not consider most of the new evidence that Catoe provided because that evidence did not relate to the period on or before the date of the ALJ's decision. Tr. 2.

Catoe argues that the evidence should have been accepted by the Appeals Council because it met the standard as being new, material, and related to the period on or before the date of the ALJ's decision. Docket Item 15-1 at 26-30. *See Hightower*, *supra* at *3. Because the Appeals Council did not review the ALJ's decision, however, this Court does not review the determination of the Appeals Council. *See Lesterhuis*, 805 F.3d at 87. For that reason, this Court interprets Catoe's argument as a request that this Court order that the new evidence be considered on remand.

Because this Court has determined that remand is necessary to further develop the record and to consider certain medical opinions included in the record that the ALJ did not consider, the ALJ should consider this new evidence in the first instance on remand.[11]

---

[11] The Court notes that the mere fact that this new evidence postdates the ALJ's decision is insufficient to determine that it is irrelevant. In *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989), the Second Circuit concluded that the claimant's "post-1980

16

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 22, is DENIED, and Catoe's motion for judgment on the pleadings, Docket Item 15, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: February 7, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

evidence is not irrelevant to the question whether he had been continuously disabled since 1977" because "[d]epending on the nature of the disability, such evidence could conceivably support a finding that [the claimaint's] condition when he visited doctors in the 1980s was the same as it had been since he injured his back in 1973, or at least since 1977."